UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARDENTE, INC., | No. C 07-4479 MHP |
|     Plaintiff, | |
|   v. | **MEMORANDUM & ORDER** |
| RICHARD J. SHANLEY, et al., | **Re: Defendant's Motion to Dismiss** |
|     Defendants. | |

Plaintiff Ardente, Inc., has brought five[1] claims, including patent infringement, breach of contract and fraud, against defendants Richard J. Shanley ("Shanley"), Wear the Best, Inc., and Stir Chef LLC (collectively "defendants").[2] Defendants now move for dismissal of plaintiff's operative complaint. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

BACKGROUND[3]

On this motion to dismiss the allegations of the complaint are taken as true. Plaintiff is a California corporation which describes itself as a "mom and pop" corporation. Each defendant is a citizen of Connecticut. Defendant Shanley is the president of Wear the Best, Inc., and was a member of Stir Chef LLC, which was dissolved in March 2004. Plaintiff alleges Wear the Best, Inc., and Stir Chef LLC are merely alter egos of Shanley, and that Shanley dominated and controlled the two entities.

John Ardente is the inventor of an automatic food-stirring device. On September 5, 2000, the United States Patent and Trademark Office (USPTO) issued to John Ardente United States Patent No. 6,113,258, entitled "BATTERY POWERED FOOD STIRRER WITH PIVOTALLY MOUNTED SPRING BIASED ARMS" ("the '258 Patent"). John Ardente subsequently assigned the '258 Patent to plaintiff Ardente, Inc.

In 2001 or 2002, defendants or their agents approached plaintiff to discuss defendants' desire to take a license to the '258 patent for a new product defendants were contemplating. No license deal was entered into at that time. In January 2003, a representative from plaintiff attended the International Housewares Show, a housewares trade show in Chicago, Illinois ("the 2003 trade show"). Plaintiff learned that defendants were intending to launch a new product, called "Stir Chef," at the 2003 trade show. Plaintiff believed the Stir Chef product infringed the '258 patent. Defendants disclosed to plaintiff at that time that defendants' own patent counsel had opined that the Stir Chef product infringed the '258 patent and that the '258 patent was valid. Defendants also allegedly disclosed to plaintiff at the 2003 trade show that defendants' patent attorney had advised defendants they could have changed the configuration of their product to avoid the '258 patent; however, such a change would have resulted in substantial delay for defendants, who had already manufactured and imported substantial amounts of the infringing product prior to the 2003 trade show. Defendants offered a license deal to plaintiff pursuant to which defendants agreed to pay royalties on sales of the Stir Chef product, including a $25,000 minimum quarterly payment during the period of the license if the sale of the product was insufficient to trigger larger royalty payments. Plaintiff accepted the deal and entered into a written license agreement with Stir Chef LLC, dated February 13, 2003, granting an exclusive, non-transferrable license to Stir Chef LLC. *See* Docket No. 46, Exh. A ("License Agreement"). John Ardente signed the license agreement on behalf of Ardente, Inc. Warren Tuttle, identified as the president of Stir Chef LLC, signed the agreement on its behalf.[4] At that time, Shanley was president of Wear the Best, Inc., and both Shanley and Wear the Best, Inc., were members of Stir Chef LLC.

Under the agreement, Stir Chef LLC was to manufacture, market and sell the Stir Chef product, along with a similar product called "EZ Stir," both of which the parties believed practiced the '258 patent. Although defendants initially anticipated manufacturing and importing one million units of their products into the United States, Shanley began to represent to plaintiff that sales were less than expected and that he did not expect the product to sell. Shanley began to put pressure on plaintiff to terminate the licensing agreement, telling plaintiff that if the agreement could not be terminated Stir Chef LLC would be forced to declare bankruptcy, thus ending any royalty payments. On February 17, 2004, the parties entered into a written "Mutual Release Under License Agreement" ("mutual release"). Stir Chef LLC agreed to pay plaintiff a lump sum of $20,000 and to cease selling the licensed product by December 31, 2004. Section 4 of the mutual release provided:

> Except for these obligations arising under the above referenced provisions of Articles 5 to 7 of said Exclusive License Agreement; and in consideration of the covenants, agreements and conditions herein, both the Licensor and the Licensee, each to the other, release and forever discharge, the other of them and the other's successors and assigns forever, and do remise, release and forever discharge the other, and the other's successor and assigns, of and from any and all manner of actions, cause and causes of action, suit, damages, judgments, executions, property damage and demands whatsoever, in law or in equity, which each has ever had, or now has, against the other and the other's successors and assigns, arising out of or being a part of said Licensee [sic].

Docket No. 46, Exh. B ("Mutual Release") at 3. Shanley signed the mutual release on behalf of Stir Chef LLC. In agreeing to the mutual release, plaintiff relied upon the assertions of defendants, and particularly Shanley, that the product was not selling and that Stir Chef LLC was on the verge of bankruptcy.

Shanley caused Stir Chef LLC to be dissolved on March 15, 2004, less than one month after signing the mutual release. Rather than cease all sales of stirrers by December 31, 2004, Shanley instead "transferred ownership" of the stirrers to Wear the Best, Inc. Wear the Best, Inc., is located at the same address as Stir Chef LLC, and the product inventory was not moved as part of the transfer of ownership. Wear the Best, Inc., began advertising and selling the product, and it continued to do so through at least August 2007, well past the agreed final sell-off date of December 31, 2004. The products that defendants sold continued during this time to have plaintiff's patent number affixed to them. Plaintiff avers it would never have agreed to the mutual release if it had

3

1 known defendants were going to continue to market Stir Chef products after December 31, 2004,
2 because plaintiff intended to market its own product embodying the '258 patent.

Plaintiff initiated this action in August 2007. Following unsuccessful mediation, the action was stayed after Wear the Best, Inc., initiated an ex parte reexamination of the '258 patent at the USPTO. Plaintiff notified the court in September 2009 that the reexamination had been completed. In November 2009, plaintiff filed its First Amended Complaint. Defendants filed the instant motion to dismiss on December 14, 2009.

LEGAL STANDARDS

I. Motion to Dismiss

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Since Rule 12(b)(6) is concerned with a claim's sufficiency rather than its substantive merits, when faced with a motion to dismiss, courts typically courts "look only at the face of the complaint." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

II. Pleading a Claim for Relief

Pursuant to Federal Rule of Civil Procedure 8, a court will grant a motion to dismiss if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's complaint may be dismissed either for failing to articulate a cognizable legal theory or for not alleging sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). In *Ashcroft v. Iqbal*, ___U.S. ___, ___, 129 S.Ct. 1937, 1950 (2009), the U.S. Supreme Court held that a court can

4

"begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[5] *Id.*

III. <u>Pleading Fraud</u>

A plaintiff in federal court alleging claims grounded in fraud must satisfy a heightened pleading standard that requires that the circumstances constituting fraud be pled with particularity. Fed. R. Civ. P. 9(b); *see Vess. v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (quotation marks omitted). To satisfy Rule 9(b), plaintiffs must explicitly aver "the who, what, when, where, and how" of the alleged fraudulent conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In addition, plaintiffs must "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); *see Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995). A plaintiff seeking to state a claim for fraud must also plead knowledge of falsity, or scienter. *See GlenFed*, 42 F.3d at 1546. The requirement for pleading scienter is less rigorous than that which applies to allegations regarding the "circumstances that constitute fraud" because "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Nonetheless, nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to "set forth facts from which an inference of scienter could be drawn." *Cooper*, 137 F.3d at 628 (quoting *GlenFed*, 42 F.3d at 1546). It is well settled in the Ninth Circuit that the Federal Rules of Civil Procedure, including Rule 9(b), "apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'" *Kearns*, 567 F.3d at 1125

(quoting *Vess*, 317 F.3d at 1102). Thus, plaintiff's state law claims, to the extent they sound in fraud, must satisfy Rule (9)(b). *Id.*; *Vess*, 317 F.3d at 1102-05.

DISCUSSION

The complaint advances five separate causes of action: (1) infringement of the '258 patent; (2) breach of contract as to both the license agreement and the mutual release; (3) fraud; (4) rescission of the mutual release; and (5) constructive fraud. Defendants challenge the legal sufficiency of the claims on a number of bases.

I. Alter Ego

As a preliminary matter, defendants base some of their challenges to the complaint on their contention that plaintiff has inadequately pled facts alleging that Stir Chef LLC and Wear the Best, Inc., were alter egos of Shanley. Defendants cite no authority, and the court is aware of none, holding that an allegation that one defendant has acted as an alter ego of another defendant is an allegation "grounded in fraud" or "sounding in fraud" such that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. Moreover, this is not a cause of action but a doctrine for determining the party upon whom liability should be imposed.

The complaint's allegations concerning the alter ego theory are plausible enough to state a claim under Rule 8. The complaint specifically alleges Shanley was a member of Stir Chef LLC and was the president of Wear the Best, Inc. Shanley signed the mutual release on behalf of Stir Chef LLC. The complaint also alleges Stir Chef LLC and Wear the Best, Inc., are physically located at the same place and that the transfer of inventory from one entity to the other involved no physical movement of the products. Also alleged is that Shanley represented he would have Stir Chef LLC declare bankruptcy, and that Shanley directed Wear the Best, Inc.'s marketing of the products. The complaint pleads enough facts concerning the alter ego theory to plausibly state a claim to relief having that theory as a basis. *See Twombly*, 550 U.S. at 570.

## II. Patent Infringement

Defendants' first argument pertaining to the patent infringement claim is that the complaint fails to give each individual defendant notice of the allegations against it. This argument is unpersuasive. The complaint specifically sets forth the following allegations: Stir Chef LLC entered into the license agreement with plaintiff; Stir Chef LLC, through its signatory Shanley, entered into the mutual release; Shanley caused Stir Chef LLC to sell its inventory to Wear the Best, Inc.; Wear the Best, Inc., continued to sell the stirrers; and Shanley controlled both entities at all relevant times. The complaint puts each defendant on sufficient notice of the charges against it. The case of *PLS-Pacific Laser Systems v. TLZ Inc.*, No. C-06-04585, 2007 WL 2022020 (N.D. Cal. July 9, 2007) (Whyte, J.), relied upon by defendants, is inapposite. The *PLS-Pacific* court dismissed a patent infringement claim without prejudice, finding the allegations insufficient to give each named defendant notice of the specific claims against it. *Id.* at *10-11. The parties in that case did not dispute that each defendant had a different role within defendants' corporate structure. *Id.* at *11. Here, the complaint is clear in its identification of the part played by each entity and is also clear in its allegation that the two entities were Shanley's alter egos.

Defendants also argue that the patent infringement claim fails because it does not allege any infringement following the issuance of the reexamination certificate from the USPTO. The purpose of the reexamination procedure is to permit an interested party to obtain review and, if necessary, correction of the claims that resulted from the initial review of the patent. *Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997). Changes to the claims may be made during reexamination, but the claims may not be enlarged. *Id.* (citing 35 U.S.C. § 305). Furthermore,

> a reissued patent is enforceable against infringing activity that occurred after the issuance of the original patent, to the extent that its claims are substantially identical to the claims of the original patent. Thus, unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate. "Identical" does not mean verbatim, but means at most without substantive change. An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical.

7

*Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1305 (Fed Cir. 2008) (quoting *Bloom Eng'g Co.*, 129 F.3d at 1250) (internal citations, quotation marks and ellipses omitted); *see also* 35 U.S.C. § 252. Accordingly, any reexamined claim of the '258 patent that is not substantially identical to the original claim cannot create the basis for an infringement action during the time period before the issuance of the reexamination certificate, i.e., before July 7, 2009. Defendants argue that the complaint contains no allegation (1) of any infringing activity after that date or (2) that any of the amended claims in the reexamined patent is substantially identical to an original claim.

It is not entirely true that the complaint does not allege any infringing activity after July 7, 2009. The complaint alleges that Wear the Best, Inc., was marketing the inventory of Stir Chef products it acquired from Stir Chef LLC through *at least* August 2007. Prior to discovery, there is no way to adduce the actual end date of Wear the Best, Inc.'s sales of the products, if such sales occurred. As to the products that were sold before July 7, 2009, defendant is correct that their sale cannot be held to constitute infringement of a reexamined patent claim that is not substantially identical to the original claim. On its face, the reexamination certificate shows that a number of revisions were made to the patent's claims during the process of reexamination. *See* Docket No. 46, Exh. D (Reexamination Certificate). Yet defendants do not actually argue that none of the claims covering the allegedly infringing products are, in fact, substantially similar.[6] Defendants simply argue that plaintiff has failed to plead that any claim is substantially similar. Defendants offer no authority for the proposition that a plaintiff must specifically plead "substantial similarity" of a reexamined claim to an original claim, and the court is aware of none. Defendants are well aware that the patent recently went through reexamination, and they cannot plausibly maintain that they have been given inadequate notice that plaintiff will assert some of the reexamined claims to be enforceable as to the alleged conduct occurring prior to issuance of the reexamination certificate.

Finally, defendants contend that they are protected under the doctrine of patent exhaustion (sometimes referred to as "first sale doctrine"), which is a defense to patent infringement. *See ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373, 1376 (Fed. Cir. 2008) (noting patent exhaustion is a defense to patent infringement). "The longstanding doctrine of patent

8

exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc., v. LG Elec., Inc.*, ___ U.S. ___, 128 S.Ct. 2109, 2115 (2008). "Exhaustion is triggered only by a sale authorized by the patent holder." *Id.* at 1121. Defendants argue that Stir Chef LLC had the right pursuant to the mutual release to sell its remaining inventory of stirrers prior to December 31, 2004. The relevant provision of the mutual release provides that Stir Chef LLC "will attempt to sell to its current customers or liquidators all inventory and stock it has on hand as soon as possible, and in any event no later than December 31, 2004 . . . ." Mutual Release at 2. According to defendant, once Stir Chef LLC sold the stirrers to Wear the Best, Inc., plaintiff's patent rights to the inventory were terminated. Defendants' position is too facile. The patent exhaustion doctrine originally developed to protect from the patent monopoly those "purchasers who bought the item for use 'in the ordinary pursuits of life.'" *Quanta Computer, Inc.*, 128 S.Ct. at 2115 (quoting *Bloomer v. McQuewan*, 14 How. 539, 549 (1853)). As discussed above, plaintiff has plausibly alleged that Stir Chef LLC and Wear the Best, Inc., were both controlled by Shanley. If the "sale" of the stirrers was de facto a sale from Shanley to himself, it cannot be the case that the doctrine of patent exhaustion can be successfully invoked; otherwise, any potential commercial infringer could assert she had already extinguished the patentee's rights by "selling" a product to herself. As to any question that might be raised about the sufficiency of the pleading, it should also be noted that patent exhaustion is a defense to patent infringement: a plaintiff has no obligation to plead facts in its complaint to rebut every defense that might be raised.

Accordingly, defendants' motion to dismiss the claim for patent infringement is DENIED.

III. Breach of Contract

Defendants contend the breach of contract claim should be dismissed as to both the license agreement and the mutual release.[7] First, defendants contend that section 4 of the mutual release expressly released all claims arising under the license agreement and that the plaintiff cannot now bring a claim for breach of the license agreement. *See* Mutual Release at 3. Plaintiff fails to respond to this argument and therefore concedes it through silence.

9

As to breach of the mutual release, defendants argue in effect that no party is a proper defendant. Defendants correctly note that by the terms of the complaint Stir Chef LLC was dissolved in March 2004, before any breach based on the alleged continued sales after December 31, 2004, could have occurred. But defendants also argue that Shanley and Wear the Best, Inc., cannot be held liable because they were not parties to the mutual release.[8] Under this theory, there would conveniently be no party who could be sued even if the contract were breached. Plaintiff's plausible allegations that Stir Chef LLC and Wear the Best, Inc., were alter egos of Shanley are more than adequate to defeat defendants' line of reasoning. If the two entities were merely alter egos of Shanley, then liability for breach of the mutual release could extend beyond Stir Chef LLC. Furthermore, the facts alleged concerning breach of the mutual release are sufficient to put defendants on notice of what each of them is alleged to have done, and the allegations concerning damages are sufficient to state a claim.[9]

Accordingly, defendants' motion to dismiss the breach of contract claim is GRANTED insofar as the claim alleges breach of the license agreement and DENIED insofar it alleges breach of the mutual release.

IV. Fraud and Constructive Fraud

The complaint alleges defendants committed fraud on plaintiff in the obtaining of both the license agreement and the mutual release. According to plaintiff, defendants induced plaintiff to enter into the license agreement with no intention of accurately accounting for the royalties due to plaintiff. Defendants also allegedly fraudulently induced plaintiff to sign the mutual release by (1) under-reporting the number of stirrers sold and thus the royalties due to plaintiff, (2) falsely representing Stir Chef LLC would declare bankruptcy unless plaintiff agreed to terminate the license agreement, and (3) falsely stating Stir Chef LLC would cease all marketing of the product as of December 31, 2004, when in fact Shanley intended to continue doing so through a "sham" sale to another entity. "The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting

10

1 damage." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (Cal. 2003) (quoting *Lazar v.
2 Superior Court*, 12 Cal. 4th 631, 638 (1996)).

3 As to the fraud count pertaining to the license agreement, defendants here too contend the parties intended to release, and did release, all claims pertaining to the license agreement through section 4 of the mutual release. Plaintiff does not respond to this argument and therefore concedes it.

As to the fraud count alleging fraudulent inducement to sign the mutual release, defendants argue plaintiff is seeking to convert a breach of contract claim into a tort claim. More specifically, defendants contend that the complaint inadequately pleads the elements of misrepresentation and scienter. Indeed, plaintiff's allegation of under-reporting is conclusory and speculative, as it provides nothing that gives rise to an inference that plaintiff actually has any reason to believe the allegation's veracity aside from plaintiff's general distrust of defendants. *See, e.g.,* FAC ¶ 49 & 53. The allegation that Shanley misrepresented his intention to cause Stir Chef LLC to declare bankruptcy should plaintiff not agree to terminate the license agreement is likewise insufficient. The complaint specifies the timing, source and context of the statement. *See id.* ¶ 21. Yet there is nothing in the complaint that would support a finding that the statement was a misrepresentation. There is no allegation that contradicts the representation that Stir Chef LLC would have been forced into bankruptcy had it been required to continue paying plaintiff $25,000 per quarter. The allegation that defendants misrepresented their intentions by promising to stop distributing the stirrers by December 31, 2004, is also inadequately pled. While a plaintiff may aver intent generally, "something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (Cal. 1985) (citing *Restatement (2d) of Torts* § 530 (1977)) (other citations omitted). Plaintiff's fraud allegations pertaining to sales beyond December 31, 2004, amount to a complaint that defendants did not perform an obligation set forth in the mutual release. Courts are justifiably loathe to allow tort claims and damages in actions that are fundamentally about enforcing legitimate business expectations rather than vindicating social policy. *See generally Oracle USA, Inc. v. XL Global Services, Inc.*, No. C 09-0537, 2009 WL 2084154

11

(N.D. Cal. July 13, 2009) (Patel, J.) (discussing interplay between contract and tort under California law). The complaint undeniably states claims for patent infringement and breach of contract but does not plead facts with the particularity necessary to state a claim for fraud.

Plaintiff has also pled a claim for constructive fraud. To state a such claim, a party must allege: (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage. *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006) (citing *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 414 (2000)). Plaintiff bases the existence of a fiduciary duty or confidential relationship solely on the existence of a licsensor-licensee relationship. Defendant argues that a patent licensing agreement does not, in itself, give rise to a fiduciary or confidential relationship and cannot therefore provide the basis for a constructive fraud claim. At least one court has held, and this court agrees, that a contractual obligation to pay royalties and to maintain full and accurate records of royalties due does not necessarily give rise to a fiduciary duty or confidential relationship. *See Portney v. CIBA Vision Corp.*, No. SACV 07-0854, 2008 WL 5505517, at *4 (C.D. Cal. July 17, 2008). Notably, plaintiff also fails to oppose this argument.

The motion to dismiss is accordingly GRANTED as to plaintiff's claims for fraud and constructive fraud.

V.  Rescission

Plaintiff has pled rescission of the mutual release as a separate cause of action. Defendants correctly note that rescission is a remedy, not a claim. *See, e.g.*, *Ojavan Investors, Inc. v. Cal. Coastal Comm'n*, 54 Cal. App. 4th 373, 392 (1997); *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F. Supp. 2d 1039, 1048 (N.D. Cal. 2009) (Alsup, J.). Plaintiff did not bother to dispute this point in its opposition. Moreover, rescission is an equitable remedy based in *quantum meruit* or quasi-contract principles; as such, it is typically available as an alternative remedy to an action for breach of contract, to ensure one party is not unjustly enriched at the expense of another where contract damages are unavailable. *See Williston on Contracts* § 68:1 (2003). In the instant case, plaintiff is in fact alleging breach of contract. There are no grounds to maintain rescission as a

12

separate cause of action. This does not, of course, place any limits on the court's power to provide equitable remedies where warranted.

Accordingly, defendant's motion to dismiss plaintiff's claim for rescission is GRANTED.

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's claims for fraud, constructive fraud and rescission are DISMISSED, and plaintiff's claim for breach of contract is DISMISSED IN PART as discussed above. Before filing any amended complaint, plaintiff must file a motion for leave to file a motion to amend, and any such motion must be filed within thirty (30) days of entry of this order.

IT IS SO ORDERED.

Dated: February 9, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

13

**ENDNOTES**

1. At issue in this action are two contracts and two related instances of alleged fraudulent inducement. For reasons unknown to the court, plaintiff pled a single breach of contract count but pled two separate counts of fraud. For the purposes of this order, the court refers to plaintiff's two separate fraud counts as one claim.

2. Plaintiff initially named Dynamic Living, Inc., as a defendant, but plaintiff later dismissed that entity from the action with prejudice. Docket No. 38 (Stipulation and Order).

3. Unless otherwise indicated, all factual allegations are taken from plaintiff's operative First Amended Complaint. *See* Docket No. 46 ("FAC").

4. The complaint states that Shanley was a signatory to the license agreement. *See* FAC ¶ 18. The copy of the license agreement appended to the complaint contradicts that assertion on its face, and plaintiff admits in its opposition brief that the identification of Shanley as a signatory to the license agreement was a mistake. *See* Docket No. 49 (Pl.'s Opp.) at 10 n.3.

5. Plaintiff erroneously characterizes *Iqbal* as a "refinement" of the pleading requirement set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *See* Pl.'s Opp. at 5. The *Iqbal* case was in fact a refinement of *Twombly*, which explicitly "retire[d]" the pleading standard set forth in *Conley*. *See Twombly*, 550 U.S. at 563.

6. Plaintiff did not allege in its complaint which claims of the '258 it believes were infringed. Form 18 ("Complaint for Patent Infringement") found in the appendix of forms in the Federal Rules of Civil Procedure does not indicate that a party must specify the particular claims thought to have been infringed. The court is unaware of any case holding that the Supreme Court's decisions in *Twombly* and *Iqbal* have now resulted in a strict requirement that a patent infringement plaintiff plead the specific claims believed to have been infringed. *See generally McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007) (discussing patent infringement pleading standards generally and the "Complaint for Patent Infringement Form" specifically, following *Twombly*). In any event, specifying the patent claims allegedly infringed enhances the plausibility of a patent infringement plaintiff's complaint. In the instant case, where there are allegations that defendants acknowledged they practiced the patent, the imperative to specify the claims infringed is diminished. In any event, plaintiff will be required to do so in its infringement contentions.

7. Defendants include a discussion of choice of law in their moving paper, noting that the license agreement includes a provision stating that California law shall apply whereas the mutual release has no choice of law provision. Defendants suggest that the law of Connecticut *might* apply to some aspects of this action but do not actually argue that it *should* apply. Indeed, defendants state that "there generally does not appear to be a conflict between Connecticut and California law as they apply to the issues raised in this motion . . . ." Docket No. 47 (Def.'s Mot.) at 11. Since defendant has not actually argued Connecticut law should be applied and has not identified any relevant conflict between California and Connecticut law, this court applies the substantive law of the forum state, California, with which it is more familiar. *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1184 (9th Cir. 2009) ("Where no authority, or insufficient authority, is presented by the parties about foreign law, a court may conclude that the parties have acquiesced in the application of the law of the forum.") (quoting *Interpool Ltd. v. Char Yigh Marine (Panama) S.A.*, 890 F.2d 1453, 1458 (9th Cir. 1989)).

8. Shanley signed the mutual release, but he did so on behalf of Stir Chef LLC.

9. As defendants concede, the complaint alleges plaintiff intended to commercialize a product embodying the '258 patent. The mutual release contains a number of provisions having the effect of

removing Stir Chef LLC from the relevant marketplace. These facts support an inference that plaintiff had a commercial interest in the prompt liquidation of the existing products.